UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAJID KOLESTANI, a/k/a<br>NASTARAN KOLESTANI,<br><br>                    Petitioner,<br><br>vs.<br><br>TEREMA CARLIN,<br><br>                    Respondent. | Case No. 3:19-cv-00129-REP<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Petitioner Majid Kolestani, also known as Nastaran or "Rose" Kolestani, is challenging her state court conviction in her Petition for Writ of Habeas Corpus. (Dkt. 1.) Respondent Terema Carlin filed a Motion for Summary Dismissal, asserting that this action was filed outside the statute of limitations period and that all but one of Petitioner's claims are procedurally defaulted. (Dkt. 12.) Petitioner has filed a Response, and Respondent has filed a Reply. (Dkts. 13, 14.) For judicial efficiency, United States Magistrate Judge Ronald E. Bush decided to review the merits of the claims rather than determine the complex procedural issues. Judge Bush ordered supplemental information from the parties to aid in the final determination.

On September 29, 2020, Judge Bush entered an Order notifying Petitioner that it intended to deny her Petition for Writ of Habeas Corpus on the merits. (Dkt. 22.) The Court afforded Petitioner a 42-day period in which to file a response to the Order.

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner has filed her Response, and Respondent has elected not to reply. (Dkt. 23.) Judge Bush also previously ordered the parties to supplement the state court record with certain records relevant to the issues at hand. (Dkt. 16.) The parties did so. (Dkts. 17, 18.) Petitioner filed a handwritten copy of a letter from his trial counsel and many letters between herself and her post-conviction attorneys from between 2013 and 2019. (Dkt. 17.)

This case was reassigned to this Court upon the retirement of Judge Bush. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkts. 6, 7.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Court takes judicial notice of the record from Petitioner's case in the Idaho Supreme Court that has been lodged by the parties. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having reviewed the record in this matter and considered the arguments of the parties, the Court enters the following Order.

## CONSIDERATION OF MERITS OF CLAIMS

1. **Standard of Law**

Federal courts are not required to address a procedural issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"). Thus, where a procedural question presents a

complicated question of law and is unnecessary to a disposition of the case, a court may proceed to the merits. *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir.1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted); *cf*. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Title 28 U.S.C. §2254(e)(2), which prohibits the use of new evidence in federal habeas matters without satisfying strict requirements, applies both to claims that were adjudicated by the state courts and those that were not. *Id*. at 185-86.

Rule 7 of the Rules Governing Section 2254 Cases grants a federal court authority to expand the existing state court record with "materials relating to the petition." *Pinholster* and §2254(e)(2) do not apply to a petitioner's attempt to overcome procedural default and timeliness bars. *Dickens v. Ryan*, 740 F.3d 1302, 1320-21 (9th Cir. 2014) (en banc).

Here, because the Court is bypassing the procedural issue and addressing the merits, the Court can review only items that were presented to the Idaho Supreme Court. New evidence cannot be reviewed to aid in a determination of the merits without a showing that § 2254(e)(2) is met. Generally, a petitioner points to state post-conviction counsel as the cause for failure to bring evidence in support of the petitioner's claims in state court, which failure acts as a bar in federal habeas corpus proceedings. The United

**MEMORANDUM DECISION AND ORDER - 3**

States Supreme Court has recently clarified that a petitioner is not permitted to produce new facts or evidence not previously presented to the state courts if his excuse for not having done so is to blame post-conviction counsel. *See* 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734, 1739-40 (2022) (holding that counsel's fault in failing to produce evidence in state court is attributable to their clients and does not satisfy 28 U.S.C. § 2254(e)(2), and that the federal courts "have no warrant to impose any factfinding beyond § 2254(e)(2)'s narrow exceptions to AEDPA's general bar on evidentiary hearings") (citation omitted, punctuation altered).

There is nothing in the record that shows Petitioner can meet the § 2254(e)(2) test to be able to bring forward new evidence. Petitioner had counsel on post-conviction review. The rule on state post-conviction review is that all the facts supporting each claim must be included in the post-conviction petition. (State's Lodging C-4, p. 3.) State post-conviction counsel did not file an amended complaint or a supplemental affidavit to bring to the state courts' attention Petitioner's testimony that she desires to bring here. In the face of *Shinn v. Ramirez*, Petitioner cannot bring forward new evidence to support the merits of her habeas corpus claims because the reason she failed to develop the record in state court is her counsel's decision-making, and that decision-making—right or wrong—is attributed to Petitioner.

2. **Background**

Petitioner and her husband were Iranian refugees, who had recently come to Twin Falls, Idaho, from Turkey, where they had sought refuge from discrimination and

**MEMORANDUM DECISION AND ORDER - 4**

potential harm in Iran. At the time she entered the United States, Petitioner was a transgender individual transitioning from male to female. She already had her testicles removed and was undergoing hormone therapy while waiting to have the remainder of her sex change surgery. She suffered great difficulties growing up as a transgender person in Iran. Although doctors in Iran had recommended completing the surgery to become a woman, she was not permitted to do so. She was not able to dress as a woman in Iran but did so upon coming to the United States.

Petitioner and her husband, Ehsan Kababian, had been together about eight years. Prior to the shooting that is the subject of her offense, Kababian had been planning to leave Petitioner for a woman in Iran. Petitioner was distraught over Kababian's plans and tried to convince him not to leave her, because she felt she had no life apart from him. On the evening in question, neighbors in a nearby apartment noticed that Petitioner and Kababian had been arguing for hours. A witness noticed Kababian leave home, park his car on the road, return home, and then get back in his car. While Kababian's car was still stopped, two witnesses saw Petitioner approach his car window, then knock on it with a gun, and when the door was opened saw Petitioner shoot Kababian in the face, killing him. (*See* State's Lodging B-2.)

One of the witnesses, Daniel Thornquest, provided a written statement and diagrams of the scene to police investigators and testified before the grand jury. (State's Lodgings B-2 and D-3.) As recounted by the prosecutor, Thornquest would have testified at trial to the following:

**MEMORANDUM DECISION AND ORDER - 5**

> Mr. Thornquest saw [Petitioner] knock on the window of the car with the gun. The door was then opened by either Miss Kolestani or Mr. Kababian. She pointed the gun at his face and fired the gun. Immediately after the gun was fired, the car accelerated at a high speed across the street into the house which is marked here on the map as—there's an arrow that shows the path of the car. There is a little box that shows the car, and the address there is 425 Fifth Avenue East.
>
> It is important to note that although obviously Mr. Kababian was the main victim in this case, that the people in the house were standing in the room, which the car punched through the wall of, and, obviously, the uncontrolled car driving at high speeds and in the middle of the night in a residential neighborhood was a great danger.

(State's Lodging B-2, pp. 20-21.)

A woman named Maggie Johnson, who had been outside her residence nearby, also witnessed the shooting. She described seeing Petitioner stand at the driver's side door and fire into the interior. Ms. Johnson saw the muzzle flash from the weapon. (State's Lodging D-1, p. 61.)

After shooting her husband, Petitioner returned to her apartment and tried to commit suicide by shooting herself in the head with the same handgun. She was taken by ambulance to the Twin Falls hospital, and then by helicopter to a Boise hospital. While at the Boise hospital, Detective Van Vooren attempted to interview her and advise her of her *Miranda* rights, but Petitioner did not understand. The investigator then arranged for a Farsi interpreter to interpret the *Miranda* rights into Farsi for Petitioner, after which she agreed to speak with the detective. In the interview, she confessed that she had shot her husband because he had indicated that he was leaving her for another woman. She said she realized immediately that she had made a big mistake.

**MEMORANDUM DECISION AND ORDER - 6**

In September 2008, a grand jury issued a superseding indictment, charging Petitioner with the first-degree murder of Mr. Kababian. (*Id.*) She was also charged with a weapon enhancement. Petitioner's attorneys were the Twin Falls County public defenders, Marilyn Paul and Ben Andersen. (*Id.*, p. 15.)

Petitioner's attorneys began preparing for trial. They requested discovery and reviewed the discovery materials provided by the State. (State's Lodging D-4.) In September 2008, they moved for a change of venue. In December 2008, they filed a motion to suppress Petitioner's hospital statement to the police investigator or, alternatively, for dismissal. Also in December, they filed a challenge to the grand jury indictment. (*See* State's Lodgings D-6.)

In March 2009, counsel supplemented the grand jury challenge, enlarging it to 22 separate grounds, and supplemented the motion to suppress/motion to dismiss. In April, counsel moved for appointment of a psychiatrist expert witness for Petitioner, specifically George Brown, a nationally-recognized expert on Gender Identity Disorder. Also, in April, after the first challenge to the grand jury indictment was denied, counsel filed a renewed challenge to the grand jury indictment and filed a motion for appointment of an Iranian cultural expert, Nayereh Fallahi.

The motions for appointment and payment of the experts were granted. (See State's Lodging D-6.) The State objected to use of the experts due to late disclosure; however, the court said it would decide the objections later, and emphasized that the State must show prejudice from the late disclosure.

**MEMORANDUM DECISION AND ORDER - 7**

In May, counsel filed a renewed motion for change of venue, with various news stories about Petitioner and the crime attached. Also in May, counsel filed a motion in limine to exclude photographs of the deceased victim at trial, and a motion to allow Petitioner to wear female clothing at trial. (*See* State's Lodgings D-6.) Petitioner's counsel also filed an objection to the court's supplemental trial and pretrial order, and an objection to the court's juror questionnaire advisory instruction.

Throughout this time, the prosecution and the public defenders engaged in plea negotiations. On January 5, 2009, the State offered to dismiss the weapons enhancement if Petitioner would plead guilty to first degree murder, and the State would "cap the fixed portion of its sentencing recommendation at 20 years." (State's Lodging D-7, p. 2.) The offer was valid for five days. (*Id*.) On January 28, 2009, the State renewed the offer, which was valid until February 20, 2009. (*Id*., p. 3.)

On March 4, 2009, the State made what it designated its "final" offer, consisting of the following alternative terms: if Petitioner pleaded guilty by March 6, the State would re-offer the previous terms; if she pleaded guilty to *both* murder and the enhancement by March 13, the State would recommend 20 years as the fixed portion of the sentence; if she pleaded guilty to both by March 20, the State would stipulate to 20 years as the fixed portion and request that the court be bound by the stipulation; if she pleaded guilty to both after March 20, the State would recommend 25 years as the fixed portion. (*See id*., pp. 4-5.)

The parties had further discussions on May 27 and 28, which was then less than 30 days from trial. Despite its earlier "final" offer timetable that was designed to become

**MEMORANDUM DECISION AND ORDER - 8**

less attractive to Petitioner as trial neared, the State agreed to an offer that was better than any previous offer—that she plead guilty to first degree murder in exchange for dismissal of the weapon enhancement and that the parties stipulate to 18 years as the fixed portion of the sentence and request that the judge be bound by that stipulation. In addition, Petitioner would waive her right to file an appeal and a sentence challenge. (State's Lodging D-7, p. 6.) The offer was valid until June 1, 2009. Petitioner signed it on May 31, 2009. (*Id.*) She signed the accompanying guilty plea advisory form on June 1, 2009, the same day as the change-of-plea hearing. (*Id.*, pp. 7-15.) Nothing in the plea records shows that any immigration issue was part of the plea-bargaining process. (*See* State's Lodging D-7.)

At the change-of-plea hearing. Petitioner had her own Farsi interpreter, Dr. Dabestani, appearing in person, and the Court had its own certified Farsi interpreter, Dr. Aslanian, appearing by telephone. At times, the two interpreters consulted to ensure that the translations were accurate. Petitioner admitted to killing her husband with premeditation, and the Court later sentenced her in accordance with the plea agreement.

Petitioner asserts that she lived in isolation in prison for about three years and did not learn very much English during that time frame. Five years after conviction, in 2014, another prisoner helped Petitioner draft and file a very late post-conviction action, containing allegations about the plea bargaining and change-of-plea proceedings. (State's Lodging B-1, pp. 17-46.) The state district court denied the State's request for dismissal on statute of limitations grounds and instead considered and denied Petitioner's entire post-conviction action on the merits. (State's Lodging B-2, pp. 46-71, 133-135.) The

**MEMORANDUM DECISION AND ORDER - 9**

Idaho Court of Appeals agreed that the claims brought on appeal had no merit, and the Idaho Supreme Court denied Petitioner's petition for review without comment. (State's Lodgings C-4, D-7.)

3. Discussion

After a review of the entire record, the Court concludes that Petitioner has provided nothing new in her Response that would cause the Court to reconsider Judge Bush's preliminary decision that her claims are without merit, and this case should be dismissed with prejudice. The standards of law were clearly set forth for Petitioner in Judge Bush's previous Order and will not be repeated here. (Dkt. 22.)

The Court will not discuss every argument Petitioner has made in her Response, but clarifies that all arguments have been considered and none warrants reconsideration of the decision. The Court understands that Petitioner desires to testify in Court to clarify her version of events. However, the colloquies in the state court record are clear and comprehensive, and United States Supreme Court precedent prohibits offering new evidence in federal court without complying with 28 U.S.C. § 2254(e)(2). Petitioner has not shown that failure to bring these facts on post-conviction review was anything other than a decision of her post-conviction counsel—which does not meet the §22554(e)(2) standard. As a result, the facts cannot be considered in a merits analysis here.

### A. Discussion of Claim 1(a): Immigration Consequences

Claim 1 is that Petitioner did not enter into her plea agreement knowingly, voluntarily, and intelligently because she was ignorant of the immigration consequences

**MEMORANDUM DECISION AND ORDER - 10**

and that her attorney told her she would be immediately deported if she did not agree. (Dkt. 3, p. 6.) This claim was decided on the merits by the Idaho Court of Appeals, and the Idaho Supreme Court denied the petition for review. Therefore, it is subject to AEDPA deference.

      Judge Bush comprehensively analyzed this claim in the Order at Docket No. 22. Petitioner desires to testify in support of her claim. As discussed above, the law precludes additional factual submissions on federal habeas corpus review unless § 2254(d)(2) is satisfied. Here, it is not. Petitioner has made no assertions as to why she could not have included her testimony in her post-conviction action. As noted above, the only fault apparent in the record is that her post-conviction attorney failed to include it in that action, and attorney fault is attributed to the petitioner. For the reasons set forth in Judge Bush's Order, this Court will deny this claim on the merits under the AEDPA standard of review. (Dkt. 22, pp. 20-27.)

### B. Discussion of Claim 1(b): Length of Sentence

      In Petitioner's post-conviction application, she asserted that her counsel told her that the plea agreement was for a maximum of 18 years of imprisonment, not the "18 years fixed, life indeterminate" sentence she actually received. (State's Lodging B-1, p. 24.) This claim was not included in the post-conviction appeal; nor was it included in the habeas corpus petition in this action. (See State's Lodgings C-1, C-3; Dkt. 3.) In the midst of this action, Petitioner first asserted this claim in her response to Judge Bush's Order giving notice of the Court's intent to dismiss the habeas corpus petition. (Dkt. 23.)

**MEMORANDUM DECISION AND ORDER - 11**

This claim was not presented to the Idaho appellate courts and therefore is procedurally defaulted. As such, it is subject to de novo review.

In her supplemental briefing in this action, Petitioner states that her defense attorney, Twin Falls County Chief Public Defender Marilyn Paul, told her that the plea bargain agreement required her to serve no more than and no less 18 years. However, even if Ms. Paul gave Petitioner this incorrect information earlier in the case, the Court's colloquy and explanation corrected the incorrect advice, informing Petitioner in person, through two interpreters in three different ways, that the 18-year fixed term was to be followed by an indetermination life sentence.

> The Court: [T]he Court will agree to follow the State's sentencing recommendation, which I'm about to state, upon your plea of guilty to the charge of first degree murder, [1] a sentence of life in the Idaho State Penitentiary, with that sentence consisting of a minimum term of confinement of 18 years, [2] followed by an indeterminate period of time not to exceed your natural life.
>
> Let me restate that sentence slightly differently. It means that you will serve at least 18 years in the Idaho State Penitentiary, and [3] after that, it will be up to the Idaho State Parole Board to determine whether you should be released from the penitentiary.
>
> You would receive credit against the 18-year portion of the sentence for time that you have been serving in the Twin Falls County Jail.
>
> Do you understand this portion of the plea agreement as I have stated it thus far?
>
> Defendant: Yes, I understood one part of it, but the other part I have to talk to my attorney.

**MEMORANDUM DECISION AND ORDER - 12**

| | |
|---|---|
| The Court: | Okay. Go ahead and do that. |
| Defendant: | I thank you. |
| | (Discussion off the record between the defendant and her counsel.) |
| Ms. Paul: | Thank you, Your Honor. |
| The Court: | Do you remember my question, ma'am? |
| Defendant: | Yes. |
| The Court: | Have I correctly stated the plea agreement as far as you're concerned so far? There is more to it. |
| Defendant: | No, everything is correct. |

(State's Lodging B-2, pp. 8-9 (numeration added).

| | |
|---|---|
| The Court: | I will not impose any greater sentence than recommended, nor will I impose any lesser sentence than recommended. Do you understand that? |
| Defendant: | Yes. |

(*Id.*, pp. 9-10.)

Even if, during the private consultation in the midst of this colloquy, Petitioner's counsel told her that she was *not* being sentenced to life in prison with the possibility of parole after 18 years, Petitioner again had the opportunity to have the judge repeat the question. But she stated that she remembered the question and that the judge's statement was correct. There is nothing in the judge's statements that would create the misimpression that Petitioner was being sentenced to a flat term of 18 years. The record is clear, and there were two interpreters aiding Petitioner and the Court.

**MEMORANDUM DECISION AND ORDER - 13**

Even if Petitioner asserts that the foregoing record of the change-of-plea hearing was unclear to her, she also had two court interpreters at the sentencing hearing, where the court clarified exactly what the sentence would be. Notwithstanding the judge's clear explanation that he was bound to sentence her to life in prison – "In our society when one takes the life of another and is found guilty or pleads guilty to first degree murder, the law requires that I impose a life sentence in this case" (State's Lodging B-2, p. 26-27) – Petitioner did not express any confusion or disagreement.  In part, the colloquy explaining the sentence reads:

> The Court: [Y]ou will be sentenced to the Idaho State Penitentiary for a unified sentence of your natural life.
>
> Dr. Dabestani: Your Honor, may the interpreter get a clarification on unified sentence, please.
>
> The Court: Okay. It's a term of art. For a sentence that consists—let me say it for the record even though you might not be able to interpret it because I need it for my record. A unified sentence of life, consisting of a minimum fixed portion of 18 years followed by an indeterminate portion not to exceed your life.
>
> Now, do you want me to try to break that down for you?
>
> Dr. Dabestani  I can do it now, Your Honor.
>
> The Court: You will receive credit for 319 days of time served in the Twin Falls County Jail, which will apply against the fixed portion of the sentence.
>
> You do not have the right to appeal this sentence or to file a Rule 35 motion because

**MEMORANDUM DECISION AND ORDER - 14**

|   |   |
|---|---|
|   | you have waived that as part of your plea agreement in this case. |
|   | Mr. Loebs, does that sentence comport— does that sentence follow the State's plea agreement in this case? |
| Mr. Loebs: | Yes, it does. |
| The Court: | Ms. Paul, does that sentence follow the defendant's sentencing agreement in this case? |
| Ms. Paul: | Yes, it does. |

(*Id.*, pp. 28-29)

The record clearly shows that the state district judge explained that the sentence was 18 years to life, and that both attorneys – in the presence of Petitioner and two interpreters – agreed that the sentence reflected the plea agreement terms. Petitioner had access to two interpreters in her native tongue; her personal interpreter asked questions to clarify that the sentence was 18 years to life, the lawyers agreed that the sentence was in compliance with the plea agreement, and Petitioner heard this all in her native tongue and said nothing about the sentence being a maximum of 18 years. This claim is subject to dismissal with prejudice under a de novo standard of review.

### C. Discussion of Claim 2

Claim 2 is that Petitioner could not waive her Fifth Amendment rights prior to being interrogated by police because she was under the influence of high dosages of pain medication during recovery from a self-inflicted gunshot wound to her head. Petitioner asserts that the combination of the drugs and the language barrier made it impossible to

comprehend what was happening. Thus, she asserts, her waiver was involuntary and her confession was unconstitutional.

Petitioner also asserts that, being from Iran, she was unaware that she could request a lawyer during questioning and she feared that she would "disappear" like people do in her home country when they refuse to speak to police. (Dkt. 3, p. 7.) Petitioner raised these claims on post-conviction review before the state district court only; they were not presented to the Idaho Court of Appeals.

Petitioner's supplemental briefing points out that, when she attempted to commit suicide by shooting herself in the head, she did not suffer simply a "bullet grazing her skull" injury (as previously descried in the record), but a 16-centimeter wide and 3.5 centimeter deep head injury. (Dkt. 23, p. 4.) The Court accepts Petitioner's clarification of the severity of the injury.

Regardless of how the injury has been described in the record, the transcription of her interview shows that neither the injury itself nor any medications administered for the injury affected her awareness and volition. The transcript shows that she understood the translated questions and appropriately responded. (State's Lodging D-2.) She did not complain of any issues with the quality of the interpretation. Importantly, her version of events matched the witnesses' version of events; the record in total is clear that she was coherent, logical, and able to report the events with accuracy. For these reasons, Claim 2 will be denied on the merits under a de novo review standard.

**MEMORANDUM DECISION AND ORDER - 16**

### D.   Discussion of Claim 3(a)

In Claim 3(a), Petitioner contends that she was denied the effective assistance of counsel because her defense attorney did not provide her a version of the Plea Agreement in her native language of Farsi and/or did not allow for sufficient time to find help in making sense of the entirety of the Plea Agreement, despite having had an interpreter available to her during that time. This claim was not presented to the Idaho Court of Appeals.

The Court agrees with Judge Bush's analysis of the merits of this claim. There is no legal basis for this claim. As a result, Claim 3(a) will be denied on the merits under the de novo review standard. (*See* Dkt. 22, pp. 30-32.)

### E.   Discussion of Claim 3(b)

In Claim 3(b), Petitioner alleges that her defense attorney failed to investigate and present any defense in the criminal case, despite Petitioner's requests. Petitioner states that she was forced to plead to the most serious charge of first degree murder by her defense attorney, even though she was adamant that the killing was unintentional and accidental. Petitioner raised this claim on post-conviction review before the state district court. This claim was not presented to the Idaho Court of Appeals.

The Court agrees with Judge Bush's analysis of the merits of this claim. (See Dkt. 22, pp. 32-34.) Petitioner cannot overcome the eyewitness statements. In addition, her attorneys steadfastly worked to defend the charges, as specifically noted above in the Background section above.  Indeed, they succeeded in obtaining a plea bargain that

**MEMORANDUM DECISION AND ORDER - 17**

excluded the weapons enhancement, resulting in a shorter fixed sentence. This claim will be denied on the merits under the de novo review standard.

### F. Discussion of Claim 4

Claim 4 is a restatement of Claim 1, with the added allegation that, in coercing Petitioner to enter into the plea agreement, Ms. Paul, the chief of the Twin Falls County public defender's office, was serving her own interests instead of Petitioner's interests. Petitioner asserts that her defense counsel lied to her and coerced her into signing the plea agreement. Moreover, she alleges she was not given appropriate time to ask questions about the content of the plea agreement and reflect upon its terms. Petitioner asserts that her defense counsel threatened her with deportation and otherwise intimidated her to force her to sign the plea agreement. Petitioner alleges that her defense attorney did not look out for her best interests and had a clear conflict of interest. . (Dkt. 3, p. 9.) This claim was not presented to the Idaho Court of Appeals and is procedurally defaulted.

The Court agrees with Judge Bush's analysis of the merits of this claim. For those reasons, this claim will be denied on the merits under the de novo review standard. (*See* Dkt. 22, pp. 34-36.)

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED on the merits and DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 18**

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: August 16, 2022

_____
Honorable Raymond E. Patricco
United States Magistrate Judge